1

2                                                                                          O

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                      DISTRICT OF CALIFORNIA

10                        WESTERN DIVISION

11   JAYENDRA A. SHAH, M.D.,            )   Case No. CV 06-7446 CAS (CWx)
                                        )
12                    Plaintiff         )   ORDER GRANTING DEFENDANTS'
                                        )   MOTION FOR SUMMARY
13   vs.                                )   JUDGMENT
                                        )
14   COUNTY OF LOS ANGELES              )
     DEPARTMENT OF HEALTH               )
15   SERVICES, ET AL.,                  )
                                        )
16                    Defendants.       )
                                        )
17   _____  )

18   **I.      INTRODUCTION**

19          This case arises from events that allegedly occurred during plaintiff Jayendra

20   Shah's employment by defendant County of Los Angeles ("the County").  The

21   gravamen of plaintiff's case is that the County and its employees have discriminated

22   against him on account of his race and/or national origin, and that they have retaliated

23   against him in response to his criticizing the standard of medical care provided by the

24   County.  Plaintiff asserts that this discrimination and retaliation is evidenced by

25   defendants' failure to assign him work appropriate for a medical doctor.  Although it is

26   not always clear what conduct is being challenged, plaintiff appears to allege that the

27   following acts are discriminatory and/or retaliatory: (1) failing to give him any work

28   assignments from 1997 through 2004, when he was on administrative leave; (2)

1
2
3

preventing him from seeing patients; (3) failing to promote him; (4) assigning him to review medical charts; and (5) denying him a private office with a telephone and a computer.

4
5
6
7
8
9
10
11
12
13
14

The conduct complained of in the operative third amended complaint ("TAC") is alleged to have commenced in or around 1992, and to have continued through the present. As set forth herein, plaintiff has filed numerous administrative claims and lawsuits, in which, with one exception, judgments have been entered against him. In this case, the Court has previously found that plaintiff's claims for discrimination and retaliation are barred by the doctrine of res judicata to the extent that they arise from conduct that predates a state court judgment entered against him in 2003 in the Los Angeles County Superior Court, and that they are time-barred to the extent that his claims under the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12900 et seq., rely on conduct occurring before 2001 or are predicated on the 1997 suspension of plaintiff's medical license, discussed infra.[1]

15
16
17
18
19

The cross-motions for summary judgment now before the Court seek to dispose of the remaining claims in this case, namely alleged wrongs that commenced in 1992 and continue to the present. As explained in greater detail herein, during the period commencing in 2001 through the present, plaintiff worked less than 20 months, from November 2004 through October 2005, and October 2007 through the present.[2] During

20
21
22

[1] See Amended March 26, 2008 Order, amended, nunc pro tunc, by March 31, 2008 Order.

23
24
25
26
27

[2] At the hearing held herein on June 30, 2008, defendants' counsel argued that plaintiff has only worked for the County for nine months, and that plaintiff has not worked for the County at all since 2005. In their statement of uncontroverted facts, however, defendants state that plaintiff worked at Long Beach from November 2, 2004, to August 22, 2005, and that after going out on leave, plaintiff returned to work on October 4, 2007. See Defendants' Amended Statement of Controverted Facts ¶ 34. Nonetheless, this
(continued...)

28

2

the remainder of this period, plaintiff was either on administrative or disability leave.

## II.    FACTS CONCERNING PLAINTIFF'S EMPLOYMENT

Plaintiff is a person of East Indian decent.  Defendant's Amended Statement of Uncontroverted Facts ("DSUF")¶ 1[3]; Plaintiff's Reply to DSUF ("Pl.'s Reply Statement") ¶ 1.  Plaintiff is a medical doctor, specializing in rehabilitation medicine.  Id.  He has been employed by the County as a physician specialist since 1976.  DSUF ¶ 3; Pl.'s Reply Statement ¶ 3.  In or about 1992, plaintiff was assigned to work at the Long Beach Comprehensive Health Center ("Long Beach").  Lodged Certified Copy of the Deposition of Jayendra Shah ("Shah Dep.") at 21:3-11.  Plaintiff is presently working at Long Beach.  Id. at 23:6-8.

In 1995, plaintiff applied for a promotion, but the promotion was denied.  DSUF ¶ 9; Shah Dep. at 28:2-11.  Plaintiff has not since applied for a promotion.  Id.

In September 1997, plaintiff was accused by the California Medical Board (sometimes referred to herein as the "Board") of mental incompetence.  DSUF ¶ 7; Pl.'s Reply Statement ¶ 7.  Following the Board's accusation, plaintiff's medical license was suspended.  Id.  On September 30, 1997, the County placed plaintiff on administrative leave.[4]  DSUF ¶ 14; Shah Dep. at 25:13-17.  On October 8, 1997, plaintiff received a

─────────────

[2](...continued)
discrepancy does not alter the Court's decision.

[3] Although plaintiff often denies various alleged material facts, he neither indicates what is specifically disputed, nor does he offer proper evidentiary support for the denials; rather, plaintiff refers the Court, without citation, to his opposition or to declarations.  Because plaintiff has failed to comply with the Local Rules, the Court will deem those material facts that are claimed and adequately supported by the County, as admitted.  Further, the Court deems facts admitted by plaintiff during his deposition, or alleged in his TAC, to be uncontroverted facts.

[4] Plaintiff remained on administrative leave until sometime in 2004.  Shah Dep. at
(continued...)

letter from the County prohibiting him from entering County property.  DSUF ¶ 8; Pl.'s Reply Statement ¶ 8.

On January 30, 1998, after a medical evaluation, plaintiff's medical license was reinstated on a restricted basis.  DSUF ¶ 8; Pl.'s Reply Statement ¶ 8; Shah Dep. at 16:10-18.  In October 2001, plaintiff was issued an unrestricted license.  DSUF ¶ 8; Pl.'s Reply Statement ¶ 8.

On or about January 27, 2004, plaintiff's physician, Daniel A. Capen, M.D., examined plaintiff for injuries related to a 1994 work-related accident.  Shah Dep., Ex. C (Disability Status report of Jan. 1, 2004).  Dr. Capen opined, "[t]his doctor can not work."  Id.  In or about March 2004, Dr. Capen placed plaintiff on temporary total disability leave.  DSUF ¶ 21; Shah Dep. at 33:9-15.  Plaintiff remained on disability leave until October 31, 2004.[5]  DSUF ¶ 21; Shah Dep. 33:9-12.  Dr. Capen released plaintiff to work with the restriction that plaintiff could do "desk work only," but "not work in [a] clinic."[6]  DSUF ¶ 22; Pl.'s Reply Statement ¶ 22; Declaration of Diana G. Ratcliff ("Ratcliff Decl."), Ex. J (Disability Status report of June 24, 2004).  Specifically, Dr. Capen found that because of plaintiff's injuries

---

[4](...continued)
34:17-24.  While on administrative leave, plaintiff received compensation, at least until March 2004, but no work assignments.  Id. at 34:17-24; 37:7-21.

[5] Although the parties assert that plaintiff was on disability leave until October 31, 2004, it appears that on June 24, 2004, Dr. Capen released plaintiff to work with restrictions.  Declaration of Diana G. Ratcliff, Ex. J (Disability Status report of June 24, 2004).

[6] In his deposition, Dr. Capen explained that plaintiff could not perform "the regular duties of a physician in a clinic setting," which included "standing and walking, hospital wards, clinical wards, all of that."  Lodged Certified Copy of the Deposition of Daniel A. Capen, M.D. at 14:19-14-21.  According to Dr. Capen, plaintiff's work would have "to be . . . sedentary with a little bit of being able to stand and stretch periodically.  So patients would have to come to him as opposed to the reverse."  Id. at 14:21-25.

4

> The only possible work [plaintiff] could do would involve a position in a
> sedentary capacity with the ability to change position at his discretion . . . .
> [Plaintiff] would only be able to drive a minimum of 5-10 miles.  He also
> should not have to be engaged in any form of standing and walking in a
> clinical setting.  At the present time, in his current state, he is 100%
> disabled from any work-related activities that would involve performing
> duties as a physician in a clinical setting.

Ratcliff Decl., Ex. H (Capen's Medical Eval. Report of Jan. 27, 2004) at 7-8.

On or about November 2, 2004, plaintiff returned to work at Long Beach.  DSUF ¶ 23; Shah Dep. at 44:17-20.  Plaintiff's work, once again, consisted of reviewing medical charts.  Shah Dep. at 51:21-52:7.[7]  On November 2, 2004, plaintiff wrote to the County, the Director of DHS, and to the Long Beach "Credential Committee," complaining that he was being subjected to discrimination and retaliation.  Ratcliff Decl., Ex. K (Letter from plaintiff to "LA COUNTY-, DHS- DIRECTOR [¶] LBCHC- CREDENTIAL COMMITTEE" of Nov. 2, 2004).

On August 22, 2005, plaintiff again went out on temporary total disability leave.  DSUF ¶ 31; Shah Dep. at 46:9-15.  He remained on disability leave until September 16, 2007.  Id.  During this period of time, plaintiff was not able to work.  Shah Dep. at 46:16-19.

In or around September 2007, Dr. Capen released plaintiff to work with restrictions.  DSUF ¶ 33.  In the "Primary Treating Physician's Progress Report," Dr. Capen states that "Dr. Shah wants work restrictions to allow him to go back to work.  He will work in a semi-sedentary capacity, not lifting more than 5

---

[7] In 2004, plaintiff could not see patients because he did not have the appropriate credentials.  DSUF ¶ 26; Shah Dep. at 56:21-57.  Plaintiff was granted privileges to see patients on or about March 28, 2005.  DSUF ¶ 26; Shah Dep. at 57:3-4 ("I got privileges, I think, in July 2005.").

pounds, not driving more than 14 miles to work." Lodged Certified Copy of the Deposition of Daniel A. Capen, M.D. ("Capen Dep."), Ex. H (Primary Treating Physician's Progress Report) at 2. In the disability status report dated September 20, 2007, releasing plaintiff to work, Dr. Capen imposed the following restrictions: "no prolonged standing and walking"; "no repeated bending, stooping, twisting"; "no forceful use of injured extremity"; and "can not work general medical clinic." Capen Dep., Ex. I (Disability Status report of Sept. 20, 2007). Dr. Capen further remarked that plaintiff could work in "(1) Rehab Specialty (2) Administration - Desk Job; (3) CQI." Id. Plaintiff ultimately returned to work on or about October 5, 2007. DSUF ¶ 34; Shah Dep. at 45:8-12. Plaintiff was once again told to review medical charts. DSUF ¶ 34. It appears that upon his return to work in October 2007, plaintiff did not have the required credentials to see patients. DSUF ¶ 26; Shah Dep. at 87:11-14 (stating that when he returned to work in October 2007, defendants forced him to apply for privileges). Since January 2008, plaintiff has been seeing patients on an accommodated schedule, which means that he sees fewer patients a day than other physicians at the clinic. DSUF ¶ 39; Shah Dep. at 97:5-8, 97:11-13 (stating that he was cleared to treat patients in or around January 2008, and has since been seeing patients).

## III.   PLAINTIFF'S LAWSUITS AND OTHER COMPLAINTS

In 1992, plaintiff filed a complaint for discrimination with the County Civil Service Commission ("the CSC"), alleging that the County failed to give him appropriate assignments. DSUF ¶ 5; TAC ¶¶ 3,14. The CSC issued CSC Order No. 92-333. DSUF ¶ 5; TAC ¶ 3. The hearing officer found that [t]here was clear evidence that [plaintiff] [was] not being utilized properly according to his qualifications." CSC Order No. 92-333 at 12.[8] The hearing officer recommended that the County meet in good faith with plaintiff to reach a solution, which would permit plaintiff to perform

_____

[8] Plaintiff has not properly filed CSC Order No. 92-333 as an exhibit. Nonetheless, the Court will consider the exhibit for present purposes.

6

work appropriate for his background and expertise, and which would accommodate his disability. Id. at 14-15.

On October 5, 1994, plaintiff filed a petition for writ of mandamus in Los Angeles County Superior Court, arguing that the County had failed to implement CSC Order No 92-333. DSUF ¶ 6; Ratcliff Decl., Ex. F (Shah v. County of L.A., et al., Case No. B099822 (Cal. Ct. App. May 14, 1997)) at 3. The trial court denied plaintiff's petition, and plaintiff appealed. Ratcliff Decl., Ex. F (Shah v. County of L.A., et al., Case No. B099822 (Cal. Ct. App. May 14, 1997)) at 3. The California Court of Appeal held that the trial court had "overwhelming" evidence to support its decision that the County had attempted "to find an assignment for [plaintiff] in his field of speciality at a facility near his residence." Id. at 6. The court therefore affirmed the trial court's judgment. Id.

Thereafter, in 1997, plaintiff filed suit against the County and various County officials in the United States District Court for the Central District of California alleging claims for race and disability discrimination in violation of Title VII and the ADA.[9] Shah, M.D. v. L.A. County, et al., 1998 U.S. App. LEXIS 32001 (9th Cir. Aug. 20, 1998). The district court dismissed his case, and plaintiff appealed. Id. at *2. The Ninth Circuit affirmed, finding that the district court properly dismissed plaintiff's claims as barred by (1) the doctrine or res judicata; (2) the failure to exhaust administrative remedies; and/or (3) plaintiff's failure to set forth evidence suggesting a

_____

[9] Pursuant to Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986). Accordingly, on its own motion the Court hereby takes judicial notice of the district court's order granting the defendants' motion to dismiss with prejudice in the case entitled Jayendra A. Shah v. L.A. County et al., Case No. CV 97-00690 WMB (C.D. Cal. Aug. 27, 1997), the Ninth Circuit's decision affirming the district court's dismissal, Shah v. L.A. County, et al., 1998 U.S. App. LEXIS 32001 (9th Cir. Aug. 20, 1998), and the California Court of Appeal's decision in Shah v. County of L.A. et al., 2005 Cal. App. Unpub. LEXIS 1822, at *2-3 (March 2, 2005).

7

discriminatory motive.  Id. at *3-5.

On or about December 12, 2001, plaintiff filed a charging complaint of discrimination with the DFEH, alleging that from 1992 to 2001, the County had denied him promotions and appropriate work assignments.  Ratcliff Decl., Ex. G (complaint in Jayendra A. Shah v. County of L.A., et al., Case No. BC284031 (Super. Ct. (L.A. County) Oct. 24, 2002).  In October 2002, while still on administrative leave, plaintiff brought suit in the Los Angeles County Superior Court against the County, the Board, and the California Department of Justice alleging causes of action related to the defendants' alleged failure to assign him appropriate work assignments, as well as workplace harassment and discrimination.  See Shah v. County of L.A. et al., 2005 Cal. App. Unpub. LEXIS 1822, at *2-3 (March 2, 2005).  The trial court sustained each of the defendant's demurrers, eventually granting judgment in favor of the defendants. Id. at *4.  Plaintiff then appealed.  The California Court of Appeal affirmed judgment in favor of the defendants.[10]  Id. at *23.

On November 21, 2006, plaintiff initiated the present action against the County; the Board; the California Department of Justice; Charles Stewart, a physician employed by the County; John Peck, a licensed medical doctor whom plaintiff believes was employed by both the Board and the County at Rancho Los Amigos Medical Center; Joseph Furman, an attorney with the California Department of Justice; and Vaughan Cain, whom plaintiff believes was employed as an investigator by the Board.

On December 26, 2007, plaintiff filed the operative TAC alleging six claims for relief.[11]  In the TAC, plaintiff asserts claims one through five against the County for (1)

_____

[10] In his deposition, plaintiff admitted that this lawsuit involved allegations that the County failed to give him appropriate work assignments between 1998 and 2001.  Shah Dep. at 39:8-10.

[11] The TAC is asserted against the County; Charles Stewart; Stephen Morris; Valerie (continued...)

breach of contract; (2) discrimination and retaliation; (3) violation of civil rights; (4) violation of civil rights relating to limitations on free speech; and (5) violation of civil rights by discriminatory treatment in the workplace. Plaintiff's fourth and fifth claims are also asserted against defendants Stewart and Morris. Finally, plaintiff's sixth claim, which alleges violation of civil rights, is asserted only against individual defendants associated with the California Medical Board. The statutory bases for plaintiff's claims are not always clear. However, it appears that plaintiff's claims for discrimination and retaliation are brought pursuant to the Unruh Civil Rights Act, Cal. Code Civ. §§ 51 et seq.; the FEHA; and 42 U.S.C. §§ 2000e et seq. ("Title VII"). Plaintiff's claims for violation of his civil rights are brought pursuant to 42 U.S.C. §§ 1981 et seq. and 42 U.S.C. §§ 1983 et seq.

On January 18, 2008, defendants the County, Charles Stewart, and Stephen Morris moved to dismiss plaintiff's second, third, fourth, fifth, and sixth claims for relief. The Court granted in part and denied in part the defendants' motion to dismiss, leaving only the following claims against the County: (1) plaintiff's first claim for breach of contract, (2) plaintiff's second claim for discrimination and retaliation under Title VII, section 1981, section 1983, and the FEHA, insofar as the FEHA claim pertains to conduct occurring after the filing of his 2001 EEOC complaint, and (3) plaintiff's fifth claim for discriminatory treatment in the workplace under Title VII, section 1981, section 1983, and the FEHA, insofar as the FEHA claim pertains to conduct occurring after the filing of his 2001 EEOC complaint. The following claim also remains against defendants Stewart and Morris: plaintiff's fifth claim for discriminatory treatment in the workplace under Title VII,

---

[11](...continued)

Orange; Dr. Thomas Garthwaite; Dr. John Waters; John S. Peck; Ron Joseph; Joseph P. Furman; and Vaughan Cain; Dave Thornton; Ronald L. Moy; and Lorie G. Rice, individuals acting under the auspices of the California Medical Board.

section 1981, section 1983, and the FEHA, insofar as the FEHA claim pertains to conduct occurring after the filing of his 2001 EEOC complaint.[12]

## IV.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

[12] By order dated May 6, 2008, the Court dismissed defendants Stewart and Morris. However, because plaintiff's fifth claim still remains against Stewart and Morris, this order was entered in error. By a separate order issued concurrently with this order the Court has vacated its dismissal of defendants Stewart and Morris, and therefore sua sponte addresses their liability herein.

Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## V.   DISCUSSION

### A.   THE COUNTY'S MOTION FOR SUMMARY JUDGMENT

### 1.   WHETHER PLAINTIFF'S BREACH OF CONTRACT CLAIM IS BARRED

At least prior to 2007, it appears that plaintiff's alleged employment contract with the County was in the form of an oral contract.[13]  Plaintiff alleges that the County breached its employment contract with him by failing to provide him with work duties commensurate with his education and training, by causing his medical license to be suspended in 1997, and by its generally discriminatory and retaliatory conduct.

The County moves for summary judgment on plaintiff's breach of contract claim, arguing that plaintiff has failed to exhaust administrative remedies as required under California's Government Claims Act ("California Government Claims Act"), Cal. Gov. Code §§ 900 et seq.  The County further argues that by virtue of the fact that plaintiff is a civil servant subject to the California Constitution, he has no oral or

---

[13] It appears that plaintiff is now claiming that the County forced him to sign a written contract in 2007.  However, plaintiff has not offered any evidence of the substance, or even existence, of this contract.

written contract to enforce.[14]

Pursuant to the California Government Claims Act, a party seeking to assert a claim against a government entity must present that claim to the government entity withing a limitations period, either six months or one year, depending on the nature of the claim alleged.  Cal. Gov. Code § 911.2(a).  Timely presentation of the claim is a prerequisite to maintaining a civil action against the public entity.  State of Cal. v. Super. Ct. (Bodde), 32 Cal. 4th 1234, 1239 (2004); Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  A claim for breach of contract must be presented to the public entity within one year of the claim's accrual.  City of Stockton v. Super. Ct., 42 Cal. 4th 730, 739 (2007) ("Contract claims fall within the plain meaning of the requirement that 'all claims for money or damages' be presented to a local public entity.").

Plaintiff has not presented any claim for breach of contract to the County.  Because plaintiff has failed to comply with the presentation requirement of the California Government Claims Act, plaintiff may not prosecute his breach of contract claim.

As to the County's argument that plaintiff has no contract claim because he is a civil servant, "Article VII of the California Constitution establishes a system of civil service employment for state government: 'The civil service includes every officer and employee of the State except as otherwise provided in this Constitution.'" Prof'l Engineers v. Dep't of Transp., 13 Cal. App. 4th 585, 591 (1993) (quoting Cal. Const. art. VII, §1(a)).  It appears that plaintiff, who is employed by the County as a physician specialist, is a civil servant.  See TAC ¶ 19 (alleging that plaintiff was

---

[14] The County also argues that even if plaintiff could allege a claim for breach of contract, that claim would be time-barred.  Because the Court concludes that plaintiff has no contract, by reason of his failure to exhaust administrative remedies and his status as a civil servant, the Court does not reach this argument.

hired as a civil servant).  As a civil servant, the terms of plaintiff's employment are set forth by statute, not contract.  See Miller v. State of Cal., 18 Cal. 3d 808, 813 (1977) ("[I]t is well settled in California that public employment is not held by contract but by statute."); Portman v. County of Santa Clara, 995 F.2d 898, 905 (9th Cir. 1993) ("Under California law, the terms of public employment are governed entirely by statute, not by contract, and hence 'as a matter of law, there can be no express or implied-in-fact contract between plaintiff[, an at will employee,] and [the County,] which restricts the manner or reasons for termination of his employment.'") (quoting Summers v. City of Cathedral City, 225 Cal. App. 3d 1047, 275 (1990)). Therefore, as a matter of law, plaintiff has no employment contract with the County, and is not entitled to invoke contract remedies.  See Hill v. City of Long Beach, 33 Cal. App. 4th 1684, 1689 (1995) (holding that because the terms and conditions of public employment are determined by statute, not contract, the plaintiff's remedies "were confined to those provided by statute or ordinance").

Based on the foregoing, the Court concludes that the County is entitled to summary judgment on plaintiff's claim for breach of contract.

### 2. WHETHER PLAINTIFF'S SECOND AND FIFTH CLAIMS FOR RELIEF ARE BARRED

Plaintiff's second and fifth claims are based on the same allegations of discrimination and retaliation; the second claim is asserted against the County only, while the fifth claim is asserted against all defendants.  Plaintiff alleges that he has suffered discrimination because of his ethnicity, and retaliation because of his speech about substandard medical care at the County's healthcare facilities.

### a. WHETHER THE CALIFORNIA GOVERNMENT

13

1
2
**CLAIMS ACT BARS PLAINTIFF'S SECOND AND
FIFTH CLAIMS FOR RELIEF**

3       The County argues that plaintiff's second and fifth claims are barred pursuant
4   to the California Government Claims Act for failure to exhaust administrative
5   remedies.

6       However, claims under section 1981, section 1983, Title VII, and the FEHA,
7   are exempt from the claim presentation requirement of Cal. Gov. Code § 911.2.
8   Williams v. Horvath, 16 Cal. 3d 834, 842 (1976) (where plaintiff brought a claim
9   under section 1983, finding that "the California remedy of recourse to the Tort
10  Claims Act need not be first sought before a plaintiff is free to invoke the Civil
11  Rights Act); Garcia v. L.A. Unified Sch. Dist., 173 Cal. App. 3d 701, 708 (1985)
12  (stating that if claim had been properly been brought under Title VII, it would be
13  exempt); Gatto v. County of Sonoma, 98 Cal. App. 4th 744, 764 (2002) (FEHA).
14  Therefore, plaintiff's second and fifth claims are not barred by reason of his failure
15  to comply with the California Government Claims Act.

16      **b.      WHETHER PLAINTIFF'S CLAIMS ARE BARRED
17              BECAUSE THEY ARE UNTIMELY**

18      The County argues that plaintiff has failed to file timely charging complaints
19  with the EEOC and the DFEH, and that therefore, he may not prosecute any claims
20  under the FEHA or Title VII.[15]

21      **i.      THE FEHA**

22
23      [15] The County also argues that plaintiff's instant claims should be limited to the
    allegedly wrongful conduct that occurred on the specific dates identified in his DFEH and
24  EEOC complaints, and that plaintiff cannot maintain any claims under Title VII because
    he did not file a charging complaint with the EEOC prior to commencing this lawsuit, and
25  because the EEOC has not yet issued him a right-to-sue letter.

26
27      Because the Court concludes herein that plaintiff's claims under the FEHA and Title
    VII are untimely, it declines to address these arguments.
28

1
2
3
4

The statute of limitations governing actions under the FEHA is provided by Cal. Gov. Code § 12960(d), which states that, except in certain circumstances not applicable here, "[n]o complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred."

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff here has not filed a charging complaint within one year of defendants' allegedly unlawful conduct. The gravamen of plaintiff's complaint is that defendants either did not provide him with any work, or with assignments appropriate for a medical doctor. Defendants' decision regarding the type of work to give plaintiff (or the lack thereof) occurred, at the very latest, in 2004 when plaintiff returned to work from administrative leave. The subsequent acts were all part of a course of conduct, and therefore, of a single "unlawful practice." See Walnut Creek Manor v. Fair Employment & Hous. Com., 54 Cal. 3d 245, 269 (1991) (where the owner of an apartment building passed over an applicant on account of his race, thirty-five times during the relevant  period, the court held "in refusing to rent to [the complainant] on the basis of race, respondents committed a single  'unlawful practice' within the meaning of the statute"); see also Morgan v. Regents of the Univ. of Cal., 88 Cal. App. 4th 52, 67 (2001) (finding that the University's decision not to rehire the plaintiff who had applied for approximately 32 jobs, was a discrete act); compare Mullins v. Rockwell Int'l Corp., 15 Cal. 4th 731, 740-41 (1997) (holding that in the case of constructive discharge, the statute of limitations begins to run when the employee resigns). Because the allegedly unlawful practice occurred in 2004, plaintiff's 2007 charging complaints are untimely pursuant to Cal. Gov. Code § 12960(d).

24
25
26

Moreover, even if plaintiff could allege that defendants' actions formed a pattern of systematic discrimination or retaliation, his claims would nonetheless be barred. The continuing violation doctrine can sometimes toll the statute of

27
28

15

1  limitations.[16]  However, it is clear that "the FEHA statute of limitations begins to run

2  when an alleged adverse employment action acquires some degree of permanence or

3  finality."  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1059 (2005).  Thus,

4  once the defendant's act acquires a degree of permanence, the continuing violation

5  doctrine is inapplicable.  In Richard v. CH2M Hill, 26 Cal. 4th 798 (2001), the

6  California Supreme Court explained that "permanence" means "that an employer's

7  statements and actions make clear to a reasonable employee that any further efforts at

8  informal conciliation to obtain reasonable accommodation or end harassment will be

9  futile."  Id. at 823.

10       It is clear that the continuing violation doctrine cannot apply in this case to

11  save claims predicated on conduct occurring outside of the limitations period.  Over

12  the years plaintiff has filed numerous civil actions, administrative complaints, and

13  other grievances based on the same conduct alleged herein.  For example, in 1994

14  plaintiff filed a petition for mandamus in state court, alleging that the County had

15  failed to comply with CSC Order No. 92-333.  In 2002, while plaintiff was on

16  administrative leave, plaintiff again filed suit in the Superior Court.  Plaintiff

17  resumed working for the County in 2004.  However, the County did not permit

18  plaintiff to see patients; instead, plaintiff was again tasked with reviewing medical

19  charts.  See e.g., Shah Dep. at 51:21-23 (Q. And when you came back to work in

20

21       [16] In Richard v. CH2M Hill, 26 Cal. 4th 798 (2001), the California Supreme Court

22  adopted the "continuing violation" doctrine.  Under that doctrine, a defendant may be held

23  liable for actions that occurred outside of Cal. Gov. Code § 12960(d)'s limitations period,
   if the conduct is "sufficiently linked" to unlawful acts that occurred within the limitations

24  period.  Id. at 812.  The Richards court applied the doctrine to a plaintiff's disability

25  accommodation and disability harassment claims.  The court held that in determining the
   applicability of the doctrine, a court should consider whether the employer's unlawful

26  actions are "(1) sufficiently similar in kind . . . ; (2) have occurred with reasonable

27  frequency; (3) and have not acquired a degree of permanence."  Id. at 823 (internal
   citations omitted).

28

2004, that's all you did, right, eight hours a day, review charts?  A. Yes.").  On November 1, 2004, plaintiff sent a letter to the County complaining about the same conduct that is at issue in this case.[17]  Ratcliff Decl., Ex. K (Letter from plaintiff to "LA COUNTY-, DHS- DIRECTOR [¶] LBCHC-CREDENTIAL COMMITTEE" of Nov. 2, 2004).

Based on the foregoing, plaintiff knew as early as 1994 that defendants were not going to rectify the problems that plaintiff believed existed.  Because the County's conduct had acquired a degree of permanence no later than November 2004, plaintiff's failure to file suit within one year of 2004, as required by the FEHA, bars his present action.  See Cucuzza v. City of Santa Clara, 104 Cal. App. 4th 1031, 1042 (2002) ("Richards determined that a lack of permanence should be one of the factors necessary to apply the continuing violation doctrine in order to fairly balance the employee's interest in resolving the dispute with the employer's interest in preventing indefinite delays.  The court explained that if the statute were to accrue when the first incident occurred, the pressure to file a lawsuit before the statute expired could easily inhibit meaningful efforts at conciliation.  But when the situation reached a state of permanence, then the plaintiff no longer has any reason to delay filing.").

### ii.    TITLE VII

An individual seeking to bring a claim under Title VII must file a timely charge with the EEOC.  Under 42 U.S.C. § 2000e-5(e)(1), a plaintiff generally must file a charge with the EEOC within 180 days of the alleged act of discrimination.  However, if a plaintiff first institutes proceedings with a "State or local agency with authority to grant or seek relief from such practice," he or she may file a charge with the EEOC within 300 days.  42 U.S.C. § 2000e-5(e)(1).  "[I]f the employee does not

_____

[17] In 2005 and 2006, plaintiff again submitted various grievances to the County.  Ratcliff Decl., Ex. O (grievance forms completed by plaintiff).

submit a timely EEOC charge, the employee may not challenge that practice in court, § 2000e-5(f)(1)." <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 127 S. Ct. 2162, 2166-67 (2007).

The limitations period begins to run "when the discriminatory act occurs." <u>Id.</u> at 2165.  In <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), the Supreme Court explained that this rule applies to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire." <u>Id.</u> at 114.  "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" <u>Id.</u>; Arthur Larson, Lex K. Larson, & Jonathan R. Harkavy, 4 Employment Discrimination § 72.07 (2008) ("The general rule is that the filing period begins when the discriminatory decision is made and communicated to the employee.").  Thus, the proper focus is on the discriminatory act, and not on the effect of that act.

In <u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980), Delaware State College denied Ricks, an African American librarian, tenure in March 1994.  <u>Id.</u> at 252.  The college had a policy of not immediately discharging a faculty member who did not receive tenure.  <u>Id.</u> at 252-53.  The college therefore offered, and Ricks accepted, a terminal, one-year contract to teach an additional year.  <u>Id.</u> at 253-54.  The contract expired on June 30, 1975.  <u>Id.</u> at 253.  Ricks then filed a charging complaint with the EEOC in April 1975.  <u>Id.</u> at 254.  The Supreme Court found that Ricks' suit was untimely.  <u>Id.</u> at 256.  The Court held that "the only alleged discrimination occurred--and the filing limitations period therefore commenced--at the time the tenure decision was made and communicated to Ricks . . . even though one of the effects of the denial of tenure--the eventual loss of a teaching position--did not occur until later." <u>Id.</u> at 258; <u>see</u> <u>also</u> <u>Chardon v. Fernandez</u>, 454 U.S. 6, 7 (1981).

On the other hand, where the employer establishes a discriminatory policy, the

limitations period begins to run anew each time a decision is made pursuant to that policy.  For example, in <u>Bazemore v. Friday</u>, 478 U.S. 385 (1986), the North Carolina Agricultural Extension Service maintained two separate, racially segregated workforces and paid black employees less than white employees.  <u>Id.</u> at 390-91 (Brennan, J., concurring joined by all members of the Court).  The salaries were established before Title VII extended to government employees; however, the disparities continued after its enaction.  <u>Id.</u>  The Supreme Court found that although liability could not be predicated on pre-Title VII acts of discrimination, liability could be imposed for acts that occurred after Title VII was enacted.  <u>Id.</u> at 395-96. The Court held that "[e]ach week's pay check that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII."  <u>Id.</u>; <u>see also</u> <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 127 S. Ct. 2162, 2164 (2007) ("[I]f an employer engages in a series of separately actionable intentionally discriminatory acts, then a fresh violation takes place when each act is committed.").

However, "[a] new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination."  <u>Ledbetter</u>, 127 S. Ct. at 2164.

As stated above, in this case, the allegedly wrongful conduct occurred, at the latest, in 2004 because that is when defendants made the decision about the type of work to assign plaintiff.  Thereafter, each assignment plaintiff was given was merely an effect of the prior decision.

Because the limitations period commenced, at the latest, in 2004, plaintiff's 2007 charging complaint with the EEOC is untimely.  Because plaintiff has failed to submit a timely charge to the EEOC, his instant claims under Title VII are barred.

Additionally, to the extent that plaintiff asserts that he was subjected to a hostile work environment, his claim fails.

19

> [W]hether an environment is 'hostile' or 'abusive' can be determined
> only by looking at all the circumstances.  These may include the
> frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance; and
> whether it unreasonably interferes with an employee's work
> performance.

Harris v. Forklift Sys., 510 U.S. 17, 23 (1993).  In a hostile work environment claim, "the actionable wrong is the environment, not the individual acts that, taken together, create the environment." Ledbetter, 127 S. Ct. at 2175.  Here, plaintiff has failed to set forth any evidence of a "hostile" or "abusive" environment.  Plaintiff has not described what any particular person did or said to plaintiff to make him feel threatened, humiliated, or otherwise offended.  In fact, plaintiff admits that he has never heard any "comments that were negative about . . . [his] religion, [his] race, [or] [his] national origin." Shah Dep. at 62:10-63:3.[18]  Rather, plaintiff's entire case is predicated on the County's failure to allow him to see patients.  However, plaintiff could not see patients between 1997 and 2004, because he was on administrative and/or disability leave.  Even when plaintiff went back to work in or around March 2004, he could not see patients because he did not have the proper credentials. Plaintiff obtained clinical privileges in 2005, but he soon after went back on temporary total disability leave.  Plaintiff remained on such leave until 2007. Further, the County could have reasonably declined to give plaintiff clinical work based on the work restrictions imposed by Dr. Capen.  Under the circumstances, the County's conduct, as a matter of law, does not give rise to a claim for a hostile work environment.

---

[18] According to plaintiff these conversations took place, but behind "closed-door[s]." Shah Dep. at 62:14-15.  Plaintiff does not, however, explain the basis for this knowledge.

1

2

### c.   WHETHER PLAINTIFF'S CLAIMS UNDER
### SECTIONS 1981 AND 1983 ARE TIME-BARRED

3

4

The County argues that plaintiff cannot prosecute any claims under sections 1981 and 1983, because those claims are time-barred.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

California Civil Procedure Code § 335.1's statute of limitations period applies to section 1983 actions filed in federal court in California.  Taylor v. Regents of Univ. of Cal., 993 F.2d 710, 711 (9th Cir. 1993).  Claims accruing before January 1, 2003, are time-barred by the applicable one-year statute of limitations; claims accruing thereafter are subject to a two-year statute of limitations.  Taylor, 993 F.2d at 711; Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).  Claims brought pursuant to section 1981 are subject to a four-year statute of limitations.  Jones v. R.R. Donnelley & Sons Co, 541 U.S. 369, 382-83 (2004); 28 U.S.C. § 1658. However, the "continuing violation" doctrine may operate to save a plaintiff's otherwise untimely claims under sections 1981 and 1983.  See Green v. L.A. County Superintendent of Sch., 883 F.2d 1472, 1480 (9th Cir. 1989) (applying continuing violation doctrine in section 1983 action); Chung v. Pomona Valley Cmty. Hosp., 667 F.2d 788, 791 (9th Cir. 1982) (adopting continuing violation rule for section 1981 action).  A plaintiff may prove a continuing violation in one of two ways: (1) by alleging a policy or practice of discrimination or (2) by alleging a series of related discriminatory acts.  Green, 883 F.2d at 1480.

21

22

23

24

In this case, any claim under section 1981 must challenge conduct occurring after December 26, 2003.  Any claim under section 1983 must be limited to conduct occurring after December 26, 2005.[19]  Further, the Court finds that the continuing violation doctrine does not apply because plaintiff has failed to proffer any facts

25

26

27

[19] While this arguably suggests that there is a question of fact regarding whether plaintiff's claims under section 1981 and section 1983 are time-barred, for the reasons set forth infra, plaintiff's claims fail on the merits.

28

suggesting a discriminatory motive.

4. **WHETHER PLAINTIFF RAISED A MATERIAL ISSUE OF FACT WITH REGARD TO THE MERITS OF HIS SECOND AND FIFTH CLAIMS FOR RELIEF**

Finally, the County argues that plaintiff's second and fifth claims for discrimination and retaliation fail on their merits.

a. **DISCRIMINATION**

i. **TITLE VII AND THE FEHA**

Generally, to satisfy the elements of a prima facie case of discrimination under the FEHA and Title VII plaintiff must show that (1) he is a member of the protected class; (2) was qualified for the position he sought or was performing satisfactorily in the position he held; (3) suffered an adverse employment decision; and (4) there is evidence suggesting a discriminatory motive. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 355 (2000) (FEHA); Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1993) (Title VII); Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (Title VII); see Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (holding that Title VII and FEHA claims are subject to same analysis). "At the summary judgment stage, the 'requisite degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence.'" Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)).

An employer can meets its burden on a motion for summary judgment by showing the absence of one or more of these prima facie elements, or that legitimate, non-discriminatory reasons existed for the employment action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), aff'd in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); Guz, 24 Cal. 4th at 354 (stating that California courts have adopted the McDonnell Douglas burden-shifting test). If the employer

22

satisfies its burden, then the burden shifts to the employee to show that the proffered reasons are a pretext, and that in fact, the employer acted with a discriminatory motive. St. Mary's Honor Ctr., 509 U.S. at 518; see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-58 (1981); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994). "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." Vasquez v. County of L.A., 349 F.3d 634, 641 (9th Cir. 2003); Martin v. Lockheed Missiles & Space Co., 29 Cal. App. 4th 1718, 1734 (1994) (stating that the employee must set forth "'substantial responsive evidence' that the employer's showing was untrue or pretextual") (quoting Univ. of S. Cal. v. Super. Ct., 222 Cal. App. 3d 1028, 1039 (1990)).

In this case, plaintiff alleges that defendants discriminated against him because they did not allow him to see patients.[20] However, plaintiff did not have an unrestricted medical license until 2001. At the time that plaintiff was issued an unrestricted medical license, he was on leave. Plaintiff remained on administrative

---

[20] Plaintiff also alleges that defendants did not give him his own office, telephone, and/or computer. However, it is undisputed that no County doctor had his or her own private office, and that plaintiff did not need a telephone or a computer because he was not seeing patients. Further, the denial of one's private office, a phone, or computer does not constitute an adverse employment action as a matter of law. Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000) (defining "adverse employment action" as an action "reasonably likely to deter employees from engaging in protected activity."); But see Vasquez v. County of L.A., 307 F.3d 884, 891 (9th Cir. 2002) (stating that employment decision must be objectively adverse).

As to plaintiff's assertion that defendants failed to promote him, it is undisputed that plaintiff last applied for a promotion in 2005. The County has proffered evidence that to be eligible for a promotion, employees must submit an application. Barbosa Decl. ¶ 14. Plaintiff has not offered any evidence in rebuttal.

and/or disability leave until 2004.  Although plaintiff went back to work in 2004, plaintiff admits that he did not have the proper credentials to see patients in 2004.[21] See e.g., Declaration of Jeffrey Barbosa, M.D. ("Barbosa Decl.") ¶ 7 ("Dr. Shah did not have privileges (the required credentialing) to see patients in 2004.  After he applied, Dr. Shah was granted privileges to see patients on or about March 28, 2005 and once again on his return to County service, on or about December 6, 2007."); Shah Dep. at 56:21-57:9 ("[T]hey took long time to approve me and I got privileges, I think, in July 2005.").  Further, there is uncontroverted evidence that even after plaintiff regained the privilege of seeing patients in 2005, because of his physical disability, plaintiff could not work in the clinic, but could only perform desk work.[22] See Capen Dep., Ex. F (Disability Status Report of April 18, 2005) (stating that plaintiff is released to return to work on April 20, 2005, but "is to do desk work only"); Barbosa Decl. ¶ 12 ("Shortly after he was given privileges, on May 19, 2005,

---

[21] According to Jeffrey Barbosa, M.D., the Associate Medical Director of Long Beach, and plaintiff's direct supervisor since 2004, "[u]nder County regulations, Dr. Shah could not see patients at County facilities without verification of proper credentials and approval of his clinical privileges."  Barbosa Decl.  ¶¶ 1, 2, 5.  Further, "[u]nder County regulations, physicians must reapply for privileges every two years or they cannot be reappointed to the medical staff."  Id. ¶ 6.

[22] Plaintiff initially submitted a document purporting to be the declaration of Dr. Capen, however, this document was not signed.  At the first hearing held herein on June 16, 2008, the Court directed plaintiff's counsel to submit a signed declaration with the Court.  Plaintiff did so on June 16, 2008.  However, Dr. Capen's declaration does not controvert defendants' stated reasons for giving plaintiff the challenged assignments.  Specifically, Dr. Capen's declaration states only what his present opinion is, or attempts to clarify what he intended to convey by and through his previous medical reports.  See also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 260 (1981) ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretext for discrimination.").  However, Dr. Capen does not once state that he conveyed any of these opinions to defendants.

Dr. Shah provided notice from his physician that he was to do desk work only.").
While plaintiff contends that defendants should have given him "consulting" work,
he admits that during the period of time complained of, there was no position in
existence in which he could do the work of a "consultant."  Shah Dep. at 73:1-4 ("Q:
How many other such type of what you consider a consultant work like that at Long
Beach Memorial right now?  A. No one."), 73:21-25 ("Q. You would agree that the
type of work that you were complaining of that you didn't get to do, the consultant
type of work, there's nobody in the County that does that; right?  A. That's the
problem.").

More importantly though, plaintiff has not offered any evidence that would
suggest a discriminatory motive, and has therefore failed to establish a prima facie
case of discrimination.  Plaintiff does not even explain why he thinks such
discriminatory motive exists.  In fact, plaintiff concedes that he has never heard
anyone say anything to him or about his race or national origin.  Nor does plaintiff
explain what anyone might have done to suggest discrimination on account of race or
national origin.  Under the circumstances, the Court finds that plaintiff has failed to
establish a prima facie case of discrimination.  Further, in light of the suspension of
plaintiff's license, his lack of privileges to see patients, and the restrictions on the
type of work plaintiff could do, the County has proffered sufficient facts to suggest a
legitimate, non-discriminatory reason for its actions.  That showing has not been
rebutted by plaintiff.  Therefore, plaintiff's claims for discrimination, under the
FEHA and Title VII, fail as a matter of law.

### ii.    SECTION 1981

To state a claim pursuant to section 1981 plaintiff show that defendants
engaged in unlawful conduct with a racially discriminatory purpose or intent, and that
said conduct violated plaintiff's legally protected rights.  Johnson v. Ry. Express
Agency, Inc., 421 U.S. 454, 460 (U.S. 1975); Gen. Bldg. Contractors Ass'n v. Pa.,

458 U.S. 375, 391 (1982).  Intent may be proven directly or indirectly through circumstantial evidence.  Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977).  However, governmental action is not required.  Johnson v. Ry. Express Agency, Inc., 421 U.S. 454 at 460; Gen. Bldg. Contractors Ass'n v. Pa., 458 U.S. at 391.  Thus, plaintiff must set forth evidence demonstrating that "(1) he . . . is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race . . . and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.)."  Peterson v. Cal. Dept. of Corrs. & Rehab., 451 F. Supp. 2d 1092, 1102 (E.D. Cal. 2006) (citing Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993)).

Because the analysis under section 1981 is the same as that for discrimination under Title VII, plaintiff's claims under section 1981 also fails.  See Fonseca v. Sysco Food Svcs. of Ariz., 374 F.3d 840, 850 (9th Cir. 2004) ("Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case.").

### iii.   SECTION 1983

To state a claim against an individual pursuant to section 1983 plaintiff must allege: "(1) a violation of rights protected by the federal Constitution or created by federal statutes or regulations, (2) proximately caused (3) by the conduct of a person (4) who acted under color of [law]."  Martin A. Schwartz, 1 Section 1983 Litigation Claims and Defenses § 1.04(A) (4th ed. 2007) (internal citations and footnotes omitted).  Further, to assert a claim against a public entity, "the plaintiff must establish a fifth element, namely that the violation of plaintiff's federal right was attributable to enforcement of a municipal policy or practice."  Id.  This fifth element may be satisfied by relying on one of three theories: "(1) that a[n] employee [of the County] was acting pursuant to an expressly adopted official policy; (2) that a[n]

1   employee was acting pursuant to a longstanding practice or custom; or (3) that a[n]

2   employee was acting as a 'final policymaker.'" Lytle v. Carl, 382 F.3d 978, 982 (9th

3   Cir. 2004) (quoting Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003)).

4           To defeat summary judgment on his section 1983 claim for discrimination,

5   plaintiff must show that "defendants acted with the intent to discriminate."

6   Sischo-Nownejad v. Merced Cmty. College Dist., 934 F.2d 1104, 1112 (9th Cir.

7   1991).  "A plaintiff who fails to establish intentional discrimination for purposes of

8   Title VII . . . also fails to establish intentional discrimination for purposes of § 1983."

9   Id.  Because the Court has concluded supra that plaintiff has failed to proffer any

10  evidence of a discriminatory motive or a discriminatory act, plaintiff's section 1983

11  claim must also fail.[23]

12                      **b.     RETALIATION**

13                      **i.     THE FEHA AND TITLE VII**

14          To set forth a prima facie case of retaliation under the FEHA and Title VII,

15  plaintiff must show that he engaged in a protected activity, that defendants subjected

16  him to an adverse employment action, and that there is a causal link between the

17

18      [23] The Court also notes that plaintiff does not have a property interest in particular
    assignments.  "To have a property interest in a benefit, a person clearly must have more
19  than an abstract need or desire for it . . . [and] more than a unilateral expectation of it . . .
    [but] must, instead, have a legitimate claim of entitlement to it." Board of Regents of State
20  Colleges v. Roth, 408 U.S. 564, 577 (1972).  The entitlement is created by "by "existing
    rules or understandings that stem from an independent source such as state law-rules or
21  understandings that secure certain benefits and that support claims of entitlement to those
22  benefits." Id.  In this case, plaintiff has failed to offer any statute, regulation, or even any
    evidence of a promise by defendants to plaintiff, to the effect that he will be entitled to
23  particular assignments.  See e.g., Berg v. Cal. Horse Racing Bd., 419 F. Supp. 2d 1219,
    1232 (E.D. Cal. 2006) ("Plaintiff's contracts secured absolutely no interest in particular
24  assignments because the contracts did not guarantee any such assignments.  Therefore,
25  Plaintiff does not have a property interest in her assignments.") (internal citation omitted).

26

27

28

protected activity and defendants' actions.  See Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 69 (2000) (FEHA); Thomas v. City of Beaverton, 379 F.3d 802, 811 (9th Cir. 2004) (Title VII); see Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (holding that Title VII and FEHA claims are subject to the same analysis).  "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."  Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987); Morgan, 88 Cal. App. 4th at 69 ("The retaliatory motive is proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter.") (internal quotations omitted).  "Alternatively, the plaintiff can prove causation by providing direct evidence of retaliatory motivation."  Miller, 797 F.2d at 731.

Plaintiff's retaliation claim also is subject to the three-step analysis of McDonnell Douglas, supra.  See Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987) (Title VII claim); Miller v. Fairchild Indus., Inc., 885 F.2d 498, 503, 504 n.4 (9th Cir. 1989) (FEHA claim).  Thus, an employer may satisfy its burden on a motion for summary judgment by showing the absence of one of the aforementioned prima facie elements, or alternatively, by proffering a legitimate, non-retaliatory reason for its actions.  See Wrighten v. Metro. Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir. 1984).  If the employer is able to satisfy this burden, then the plaintiff must some forward evidence showing that the "proffered explanation was a pretext, or . . . that a discriminatory reason more likely motivated the employer's action."  Id.

Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter .

28

. . ." 42 U.S.C. § 2000e-3(a).  "The objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice."  Manoharan v. Columbia Univ., 842 F.2d 590, 592 (2d Cir. 1988).  An unlawful employment practice in turn is defined as an "employer['s] [] fail[ure] or refus[a] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  Thus, "Title VII prohibits an employer from retaliating against an employee who has 'opposed' any practice by an employer made unlawful under Title VII.  It also prohibits retaliation against an employee who has 'participated' in any manner in an investigation under Title VII."  Warren v. Ohio Dep't of Pub. Safety, 24 Fed. Appx. 259, 264 (6th Cir. 2001).  In the Ninth Circuit, to establish the first element of a prima facie case, i.e., engagement in a protected activity, the "[plaintiff] must only show that she had a 'reasonable belief' that the employment practice she protested was prohibited under Title VII."  Trent v. Valley Elec. Ass'n, 41 F.3d 524, 526 (9th Cir. 1994).

Similarly, the FEHA prohibits an employer from retaliating against an employee who has "opposed any practices forbidden under [the FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [the FEHA]."  Cal. Gov. Code § 12940(h).  The FEHA provides that

It shall be an unlawful practice . . . [f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in

compensation or in terms, conditions, or privileges of employment.
Cal. Gov. Code § 12940(a).

It appears that the only basis for plaintiff's claim for retaliation is plaintiff's alleged speech about substandard medical care at County healthcare facilities. However, this speech, which does not concern any practice prohibited by Title VII, is not considered protected activity under Title VII. Therefore, plaintiff's claims for retaliation under Title VII and the FEHA fail.

### ii.    SECTION 1983

As stated above, to state a claim pursuant to section 1983 plaintiff must allege "a violation of rights protected by the federal Constitution or created by federal statutes or regulations." Martin A. Schwartz, 1 Section 1983 Litigation Claims and Defenses § 1.04(A) (4th ed. 2007) (footnote omitted). Here, plaintiff alleges that defendant retaliated against him because of his speech. In determining whether a plaintiff's speech is constitutionally protected, courts apply a two-step test. See Ceballos v. Garcetti, 361 F.3d 1168, 1173 (9th Cir. 2004), rev'd on other grounds, 547 U.S. 410 (2006). First, the court must determine whether the speech at issue addresses a matter of public concern. Id. Second, the court must apply the Pickering balancing test "to determine whether [plaintiff's] interest in expressing himself outweighs the government's interests in promoting workplace efficiency and avoiding workplace disruption." Id. (internal quotation marks and citations omitted).

The Court is mindful that speech that addresses a matter of public concern is constitutionally protected, and may therefore form the basis of a First Amendment retaliation claim. However, in this case, the only speech that plaintiff has identified with any sort of specificity is speech that occurred in 1997. The acts in 1997 occurred long prior to the applicable statute of limitations. See Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 929 (9th Cir. 2004) (stating that to create a genuine material dispute about whether retaliation was a substantial or motivating factor, the

30

plaintiff must not only show that the defendant was aware of the plaintiff's expressive conduct, but must also (1) establish proximity in time between his or her expressive conduct and the allegedly retaliatory actions; (2) produce evidence that the defendant expressed opposition to the plaintiff's speech, either to plaintiff or to others; or (3) demonstrate that the defendant's proffered explanations for adverse action were false and pretextual).   Furthermore, to the extent plaintiff avers that his speech continued, plaintiff does not state what he said, when he said it, or to whom he made the statements.  Moreover, notwithstanding the absence of any evidence about the content and circumstances surrounding plaintiff's speech, the County has advanced sufficient evidence of legitimate reasons for assigning plaintiff desk work. In response, plaintiff has not offered any credible or admissible evidence indicating that the County's proffered reasons were pretext for retaliation. Further, there is absolutely no evidence to support <u>Monell</u> liability against the County.  Therefore, because there are no triable issues of material fact as to plaintiff's section 1983 claims, summary judgment should be entered in defendants' favor.

Based on the foregoing, the Court concludes that the County is entitled to summary judgment on the merits of plaintiff's second and fifth claims for relief. Further, defendants Stewart and Morris are entitled to summary judgment on plaintiff's fifth claim for relief.

**B.    PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff moves for summary judgment arguing that the County has violated plaintiff's rights by and through its long-standing practice of forcing plaintiff, a medical doctor, to review medical charts.

For all the reasons stated above, the Court denies plaintiff's cross-motion for summary judgment.

**VI.  CONCLUSION**

In accordance with the foregoing, the Court hereby GRANTS the County's

1  motion for summary judgment, and sua sponte GRANTS summary judgment in favor

2  of defendants Stewart and Morris.  The Court DENIES plaintiff's cross-motion for

3  summary judgment.

4          IT IS SO ORDERED.

5  Dated: July 1, 2008

6

7

8  CHRISTINA A. SNYDER
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28